# UNITED STATES DISTRICT COURT
## SOUTHERN District of NEW YORK

SUSAN SCHNUR

           Plaintiff(s),

- against -

CTC COMMUNICATIONS CORP.
GROUP DISABILITY PLAN, and
CONTINENTAL CASUALTY COMPANY.

           Defendant(s).

**SECOND AMENDED SUMMONS IN A CIVIL CASE**

CASE NUMBER: 05-CV-3297 (KMK)

TO:    CTC COMMUNICATIONS CORP.      Continental Casualty Company
         GROUP DISABILITY PLAN             CNA Plaza 09 South
         c/o Mary L. Marshall & Associates     Chicago, Illinois 60685
         37 Walnut Street
         Wellesley, Masschusetts 02481

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY, (name and address)

**BINDER & BINDER, P.C.**
**2805 Veterans Memorial Highway**
**Suite 20**
**Ronkonkoma, New York 11779**

an answer to the complaint which is herewith served upon you, within __20__ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

CLERK                                                 DATE

(BY) DEPUTY CLERK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SUSAN SCHNUR,

                              PLAINTIFF,                CIVIL
                                                              ACTION NO.: 05-CV-3297 (KMK)

   – AGAINST –

                                                              **SECOND AMENDED**
                                                              **COMPLAINT**

CTC COMMUNICATIONS CORP.
GROUP DISABILITY PLAN, and
CONTINENTAL CASUALTY COMPANY.

                              DEFENDANT.
------------------------------------------------------------X

       Plaintiff, Susan Schnur, by her attorneys, BINDER & BINDER, P.C., for her Complaint against the Defendant, CTC Communications Corp. Group Disability Plan, (the "LTD Plan"), and Co-Defendant, Continental Casualty Company, ( "CNA") hereby alleges as follows:

### JURISDICTION AND VENUE

1.   Jurisdiction of the Court is based upon 29 U.S.C. §§ 1132(e)(1) and 1132(f) which give the District Courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan. In addition, this action may be brought before this Court pursuant to 28 U.S.C. § 1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

2.   Under the Employee Retirement Income Security Act of 1974 (hereinafter, "ERISA") (29 U.S.C. §§ 1001, *et seq.*), the long-term disability plan at issue in this litigation must contain provisions for administrative or internal appeal of denial of benefits.

3.   Plaintiff has exhausted all administrative avenues of appeal and has received a final denial, and therefore, this matter is properly before this court for *de novo* judicial review under

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

4. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2), which allows an action under Title I of ERISA, as amended, to be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found.

### NATURE OF ACTION

5. This is a claim seeking a declaration that Plaintiff is entitled to disability income benefits pursuant to the terms and conditions of an employee welfare benefit plan and a group long-term disability insurance policy.

6. Defendant, the LTD Plan, provides group long term disability benefits, sponsored and funded by CTC Communications Corp. ("CTC"), through a policy issued by Defendant, Continental Casualty Company ("CNA."). As Defendant, the LTD Plan, is an employee benefit welfare plan established and maintained by an employer or employee organization for the benefit of its employees, ERISA applies to this action. Said benefits were effective at all times relevant hereto.

7. Claims for benefits are administered and paid through a Group Long-Term Disability Insurance Policy, No. SR-83091448 (the "Group Policy"), issued by CNA.

### STANDARD OF REVIEW

8. Although the Summary Plan Description ("SPD") produced by the Plan Administrator contains a grant of discretionary authority to the Plan Administrator, it does not contain such a grant to the individual plans' insurers.

9. Moreover, all actions and decisions regarding Ms. Schnur's claim for disability benefits were made by CNA, or its subsidiaries.

10. CNA, as both the decision-maker and insurer, operated under a conflict of interest because any benefits paid on this claim would have to be paid out of CNA's own coffers, and this conflict of interest had a significant impact on Defendants' processing of this claim and the decision to terminate benefits.

11. Moreover, as detailed herein, during the "administrative review" of this claim, CNA failed to provide Plaintiff with a full and fair review, as required by ERISA and its regulations, thus mandating a *de novo* review by this Court.

12. As a result of this conflict of interest, this Court must review the denial of Ms. Schnur's benefits *de novo* under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989).

### THE PARTIES

13. Plaintiff was born on March 8, 1966, is presently 39 years old and was a resident of New York.

14. Defendant, the LTD Plan, is an employee benefit welfare plan as defined by ERISA, and its terms and benefits are the subject matter of this action. Upon information and belief, the LTD Plan is sponsored and funded by CTC.

15. Defendant, Continental Casualty Company, is an Illinois corporation and insurance company licensed to conduct the business of insurance in New York State. Continental Casualty's address is CNA Plaza – 09 South, Chicago, Illinois 60685. Upon information and belief, Continental Casualty is a wholly owned subsidiary of CNA, under whose letterhead all of the carrier's correspondence was sent.

## STATEMENT OF FACTS

<u>Plaintiff's Occupation:</u>

16. Plaintiff worked for CTC beginning May 1, 2000, and she continued working there until the onset of her disability on December 1, 2001.

17. During her work tenure at CTC, Plaintiff was employed initially as a Technical Service Coordinator, and then as a Network Designer. These positions required her to function at a high cognitive level at all times while employed. Plaintiff was required to travel extensively as she worked at up to six (6) offices at the height of her employment. When Plaintiff ultimately could not work any longer, she was working at two offices, "Yorktown" and "Elmsford," receiving a travel allowance of approximately $300.00 every month.

18. Plaintiff's occupation required her to:

- ensure a uniform and comprehensive approach to maximize the effectiveness of customer implementation and solutions provided by CTC, in a technical project management role within the customer care/technical services division.

- plan, direct, and communicate activities relating to the implementation and conversion of customer network solutions on the IntelliNet Platform.

- work closely with customers, account teams, engineering, and marketing to identify and communicate project scope, technical environment, and deliverables to ensure common expectations and coordinate with the account team, customers and vendors, site surveys and review with various personnel.

- maintain a high level of technical and analytical skills necessary to assist in the development and implementation of new solutions, technologies, applications, and /or procedures.

- maintain herself as a highly motivated individual, with the ability to multi-task, and manage multiple, conflicting priories, in a fast-paced

       environment with minimal supervision.

- continually upgrade network and application knowledge of all applicable products, programs, and service of CTC and proactively continue self development through in-house and external training, reading of periodicals, and networking with peers.

- understand and work with new technologies quickly and effectively.

- develop and exercise exemplary work habits and routines.

- conduct herself in a professional and ethical manner, while working cooperatively with others CTC employees and managers to assure high quality customer service.

- possess a positive, outgoing attitude, and be able to work well in a team atmosphere.

- perform all other duties as assigned by the director of technical services.

16. Plaintiff's occupation would be classified as a "sedentary" occupation by the DICTIONARY OF OCCUPATIONAL TITLES (4th Ed. 1991), *i.e.*, exerting up to 10 pounds of force occasionally (up to 2⅔ hours in an eight-hour workday).

17. Plaintiff's pre-disability monthly income at the time she became disabled was approximately $5,416.68 per month.

18. For all relevant periods prior to December 1, 2001, Plaintiff, together with other regular employees of CTC Communications Corporation, was a covered participant under the Defendant, LTD Plan.

The Terms of the LTD Plan:

19. The LTD Plan provides for payment of monthly income benefits to participants of the LTD

Plan who become disabled.

20. The monthly benefit is determined based on a set percentage (60%) of pre-disability eligible compensation capped at $6,000.00 per month, and reduced by other income benefits as those terms are identified in the LTD Plan.

21. Benefit offsets include Social Security disability benefits. Thus, the LTD Plan realizes a financial benefit from a claimant's receipt of Social Security disability benefit income.

22. Upon information and belief, the monthly offset for Social Security disability benefits is frozen at the amount of the initial award of such a benefit and does not include any cost of living adjustments a claimant receives thereafter from the Social Security Administration.

23. Plaintiff was awarded and continues to receive, Social Security disability benefits with an initial award amount of $1,333.00 per month. By Notice of Award dated May 22, 2003, Ms. Schnur was found disabled and entitled to Social Security disability benefits with an onset date of November 23, 2001. The Social Security Administration continues to find the Plaintiff disabled within the definition of the Social Security Act, and thus, Ms. Schnur continues to receive these benefits without interruption.

24. Under the terms of the CTC Plan, benefits commence after a 90-day Elimination Period. In the instant matter, Plaintiff became entitled to benefits on March 3, 2002.

25. The maximum benefit period under the LTD Plan is until August 12, 2031, the Plaintiff's 65th birthday.

26. The LTD Plan for the Group Long Term Disability Insurance designed for the employees of CTC Communications Corp., Class 2, defines "disability" or "disabled" in pertinent part as follows:

HOW DO WE DEFINE DISABILITY?
Disability or Disabled means that you satisfy the Occupation Qualifier or the Earnings Qualifier as defined below.

OCCUPATION QUALIFIER
"Disability" means that during the Elimination Period and the following 24 months, injury or sickness causes physical or mental impairment to such a degree of severity that you are:

A.  Continuously unable to perform the Material and Substantial Duties of your regular occupation; and
B.  Not working for wages in any occupation for which you are or become qualified by education, training or experience.

After the monthly benefit has been payable for 24 months, "Disability" means that injury or sickness causes physical or mental impairment to such a degree of severity that you are:

(1) Continuously unable to engage in any occupation for which you are or become qualified by education, training or experience; and
(2) Not working for wages in any occupation for which you are or become qualified by education, training, or experience.

EARNINGS QUALIFIER
You may be considered disabled during and after the elimination period in any month in which you are gainfully employed, if an injury or sickness is causing physical or mental impairment to such a degree of severity that you are unable to earn more than 80% of your monthly earnings in any occupation for which you are qualified by education, training, experience. On each anniversary of your disability, we will increase the monthly earnings by the lesser of the current annual percentage increase in CPI-W, or 10%.

You are not considered to be disabled if you earn more than 80% of your monthly earnings. Salary, wages, partnership or proprietorship draw, commissions, bonuses, or similar pay, and any other income you receive or are entitled to receive will be included. Sick pay and salary continuance payments will not be included. Any lump sum payment will be prorated, based on the time over which it accrued or the period for which it was paid.

Plaintiff's Disability:

27.  On or about August, 2001, Plaintiff began suffering from an acute exacerbation of Lyme disease symptoms, as well as symptoms related to Fibromyalgia and Chronic Fatigue

Syndrome. These debilitating symptoms have continued to the present and Plaintiff has received health care benefits for the treatment of said symptoms in excess of $100,000.00.

28. Plaintiff suffers from, among other symptoms, multiple joint pain and generalized body weakness secondary to Lyme's Disease, cervical and lumbar spine radiculopathy, and myofascial pain syndrome. In addition, Plaintiff also suffers from straightening of the cervical spine, degenerative disc disease of the C5-C6 level with a prominent dorsal protrusion, mild to moderate bilateral neuroforaminal stenosis, with the possibility of arm parasthesias due to contact either C-6 nerve, and concurrent mild central stenosis of the spinal cord.

29. Plaintiff has received "IV Rocephin" treatments for her condition. These treatments were full time treatments (seven days a week,) lasting hours, leaving her dizzy and unable to stand or drive a car following the treatment.

30. These debilitating symptoms and her reactions to the medications being used to treat Ms. Schnur's multiple conditions have left her totally disabled and unable to work, as the terms are defined in the LTD Plan.

31. Plaintiff was forced to stop working after December 1, 2001, due to these debilitating symptoms.

32. Plaintiff's medication regimen contributes to Plaintiff's fatigue, and her treating doctors' note that Plaintiff continues to experience severe debilitating symptoms as a result of her multiple illnesses.

33. During the Elimination Period mandated by the LTD Plan, which ran from December 1, 2001, through March 3, 2002, Plaintiff received regular medical treatment from her treating

physicians.

34. Plaintiff's treating doctors have continued to monitor the Plaintiff's deteriorating condition since the onset of her disability, documenting additional symptoms, restrictions and limitations, and the failure of the various drug therapies to control her symptoms. Dr. Daniel J. Cameron, board certified in internal medicine, has diagnosed Plaintiff with Lyme Disease. Dr. Cameron has written extensively about Lyme Disease and is a Board Member of the International Lyme and Associated Disorders Society.

35. Plaintiff has continued to experience debilitating symptoms as a result of her illnesses and has been periodically hospitalized for her conditions.

36. Plaintiff has received, and continues to receive, medical treatment for her numerous medical conditions from her treating doctors.

37. Ms. Schnur's "Total Disability" as defined by the SPD, continues to date.

### PLAINTIFF'S FIRST CAUSE OF ACTION FOR LONG-TERM DISABILITY BENEFITS

38. Plaintiff repeats and re-alleges the allegations contained in the Paragraphs number "1" through "37," as if fully set forth herein.

39. With regard to Plaintiff's claim for benefits under the LTD Plan, Plaintiff worked for her employer through December 1, 2001.

40. Plaintiff was unable to return to work after December 1, 2001. She advised her employer that she was disabled and unable to work. She was totally disabled within the definition of the LTD Plan's SPD: "Continuously unable to perform the Material and Substantial Duties of your regular occupation."

41. Plaintiff continues to be so disabled, and she remains continuously unable to engage in her "regular occupation" for which she is qualified by her education, training or experience.

42. In compliance with the terms and conditions of the LTD Plan, Plaintiff timely submitted her claim form, together with an Attending Physician's statement. The terms of the LTD Plan provided that benefits were to commence as of March 3, 2002, *i.e.* after the expiration of the 90-day Elimination Period.

43. On July 2, 2002, CNA, the insurance carrier, informed Ms. Schnur by letter, that her illnesses did not render her disabled and her claim for her long term disability benefits was denied.

44. According to CNA's July 2, 2002 letter to Plaintiff, it had denied her claim because it had determined that based on their evaluation of her treating doctor's records, and information regarding her daily activities, she did not show that she had a continuously disabling impairment and thus, was not disabled:

> In conclusion, we do not see any evidence in the current medical records to establish that your condition imposes a physical or psychological impairment that would preclude you from engaging in the substantial and material duties of your regular occupation on a sustained basis.

July 2, 2002 Letter from CNA.

45. CNA's July 2, 2002, denial failed, among other things, to consider the supporting documentation set forth in Plaintiff's treating doctor's reports, the misuse of the Center for Disease Control's ("CDC") criteria for Lyme Disease, and the multiple diagnoses of disabling medical conditions. The July 2, 2002 denial ignored Plaintiff's subjective

complaints, without ever considering the side effects of Plaintiff's numerous medications.

46. Ms. Schnur appealed CNA's decision by letters dated August 23, 2002, February 14, 2003, March 6, 2003 and March 21, 2003.

47. By letter dated March 28, 2003, CNA acknowledged receipt of the March 21, 2003 letter. CNA stated that the file was being "referred to the appeals committee for review."

48. By letter dated April 16, 2003, CNA's Appeals Committee acknowledged receipt of the March 6, 2003 correspondence and of Ms. Schnur's request for reconsideration of her claim for long term disability benefits. CNA also requested an additional 45 days to conduct "additional investigation."

49. Ms. Schnur responded to the March 28, 2003 correspondence by letter dated April 29, 2003. This correspondence was faxed and mailed to CNA as part of Ms. Schnur's appeal.

50. By Letter dated May 2, 2003, CNA denied Ms. Schnur's appeal. This letter was signed by CNA's employee Joye M. Kelly, an Appeals Committee Member.

51. The May 2, 2003 letter refused to acknowledge that Ms. Schnur has Lyme disease, and stated that "we have concluded there is no evidence that establishes a medical basis to support a condition(s) that would have precluded your client from performing her occupational work activity as of 11/27/01 and continuing." CNA claimed that Plaintiff was not totally disabled, and advised her that all administrative reviews had been exhausted.

52. On or about May 22, 2003, the Social Security Administration determined that the Plaintiff was disabled as of November 23, 2001. The Social Security Act, defines disability as: unable to engage in any substantial gainful activity (*see*, 42 U.S.C. §416(i) –

Definition of "Disability" in the Social Security Act).

53. The definition of disability applied by the Social Security Administration is substantially more restrictive than the definition of disability applicable to Plaintiff's claim under the LTD Plan.

54. Moreover, the LTD Plan and, upon information and belief, the Plan's insurance carrier CNA, would receive a pecuniary benefit from Plaintiff's receipt of Social Security disability benefits in light of the offset provision for Social Security disability benefits contained in the LTD Plan documents and the CNA insurance policy.

55. CNA's determination was based solely upon its own internal document review and its flawed vocational analysis. CNA never took into account the plaintiff's inability to focus and stay awake for long periods of time, nor did it take into account all of the duties and tasks Plaintiff would have to handle over the course of a day.

56. Neither the Plan Administrator, the LTD Plan, nor the insurance carrier has ever had Plaintiff examined by any "Independent" Medical Examiner (IME).

57. In essence, CNA totally disregarded the findings and opinions of Plaintiff's treating physicians, in favor of its own medical consultants who never had any direct contact with Plaintiff.

58. CNA's review of this claim has been neither full nor fair, and instead, has been driven by its own pecuniary interest in denying benefits, which it would have to pay out of its own assets.

59. The Plan Administrator and the LTD Plan incorrectly allowed CNA to make decisions, and as such, failed in its duty to adequately monitor and correct the carrier's bad faith


handling of this claim.

60. CNA, as both the decision-maker and the party responsible for paying benefits out of its own funds, was operating under a conflict of interest, which had a material and substantial influence on its decision to deny Plaintiff's claim. Specifically, CNA allowed its own pecuniary interests to control the handling and decision making on this claim, in that it sought to avoid liability for the monthly benefit it would have to pay Plaintiff each month until she reached 65 years of age.

61. In seeking to further its own pecuniary interests, CNA has denied Plaintiff her right to a full and fair review of the denial of his claim, as required by ERISA.

62. Fiduciaries have a statutory obligation, in performing their duties, to act prudently and solely in the interest of plan participants and beneficiaries, and strictly in conformance with the provisions of the plan.

63. The LTD Plan and the Plan Administrator have failed to make any decisions concerning Plaintiff's claim for disability benefits. Rather, the long-term disability claim decisions rendered in the instant action have been made by CNA, which has a pecuniary interest in denying claims.

64. Fiduciaries also have a statutory obligation to fairly interpret and construe the terms of the plan and thereby make decisions in accordance with plan language.

65. CNA's decisions were not supported by the medical evidence and moreover, did not properly apply the language of the LTD Plan.

66. CNA's decisions in the instant claim were not supported by the evidence submitted with Plaintiff's claim.

67.   Plaintiff was and remains disabled within the terms and conditions of the LTD Plan. Plaintiff is, therefore, entitled to his receipt of monthly Long-Term Disability benefits pertaining to his disability, with benefits commencing on December 1, 2001, and continuing to the present, under the terms of the LTD Plan and the Group Policy.

**WHEREFORE**, Plaintiff respectfully requests the following relief:

a.   That the Court declare and then determine that under the terms of the LTD Plan that the Plaintiff's disability began on or about December 1, 2001, and that she continues to be disabled within the LTD Plan's provisions;

b.   That after making such a determination, the Court grant Plaintiff appropriate legal and equitable relief and order Defendant, the LTD Plan, and/or Defendant CNA to compensate Plaintiff for her disability in accordance with the terms of the LTD Plan;

c.   That the Court award Plaintiff his attorneys' fees pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(g); and

d.   That Plaintiff receive such other necessary, proper and equitable relief, including without limitation, interest, costs and disbursements, as to which he may be entitled.

Dated: July 26, 2005
       Ronkonkoma, New York

<div style="text-align: right;">

**BINDER & BINDER, P.C.**

By: _/s/ Harry J. Binder_
Harry J. Binder (HJB 5450)
Attorneys for Plaintiff
2805 Veterans Memorial Highway
Ronkonkoma, New York 11779
Telephone: (631) 361-6699
Facsimile: (631) 670-2569

</div>